V. Zay Smith and Ida Mae Smith, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 85450.   Filed March 6, 1962.

*Frank M. Cavanaugh, Esq.*, for the petitioners.
*James H. Martin, Esq.*, for the respondent.

Train, *Judge:* Respondent determined a deficiency of $6,992.20 in petitioners' income tax for 1957.

The only issue presented in this case is whether the gain received by petitioner V. Zay Smith on liquidation of his interest in a partnership is to be taxable as a capital gain or as ordinary income.

FINDINGS OF FACT.

Some of the facts have been stipulated and are found as stipulated.

Petitioners, V. Zay Smith and Ida Mae Smith, husband and wife, reside in Denver, Colorado. For the taxable year 1957 they filed a joint Federal income tax return with the district director of internal revenue at Denver, Colorado.

On or about January 1, 1947, petitioner V. Zay Smith (hereinafter sometimes referred to as Smith), together with three other individuals formed a personal service partnership known as Geophoto Services (hereinafter sometimes referred to as Geophoto). Smith owned a one-fourth interest in Geophoto, the principal business of which was the evaluation of geological structures based upon aerial photography, primarily for the use of the petroleum industry.

Geophoto's articles of partnership were revised on December 31, 1952. The partnership was to continue for a period of 5 years from

the date of revision. Article 25 of the revised articles of partnership provides in entirety as follows:

25. If a majority of the partners at any time decide that it is in their interests, or in the interests of the firm or its clients that some other partner (hereinafter referred to as the specified partner) cease to be a member of the partnership, then whether or not the specified partner or any other partner is in default, the said majority, by their unanimous vote, and upon tender to the specified partner of the consideration agreed to in this paragraph 25 may expel the specified partner, who thereupon shall no longer be a partner and shall no longer have any interest in the partnership, its business or any asset thereof, and it is hereby covenanted and agreed that in such event full title to and ownership of all of the specified partner's interest and rights in or to the partnership, its assets and business, is hereby granted, sold and conveyed to, and shall automatically pass to and vest in the remaining partners, who may continue in business under the firm name. The amount to be paid to the specified partner on his expulsion as the agreed consideration for his said interest is the then book value of his interest in the partnership as carried on the books of the partnership plus a premium equal to forty (40%) percent of so much of such book value as does not exceed $50,000.00, plus fifteen (15%) percent of so much of said book value as exceeds $50,000.00, but does not exceed $80,000.00, plus seven and one-half (7½) percent of so much of said book value as exceeds $80,000.00, but does not exceed $100,000.00 (no premium to be payable on account of any part of the book value over $100,000.00). The entire agreed consideration shall be payable in cash and may be paid out of partnership funds and out of the individual funds of the partners making the payment as they shall determine and concurrently with his receipt of the payment the specified partner shall execute and deliver to those making the payment his special warranty deed conveying to the remaining partners any partnership real estate and a written acknowledgment signed by him that he is no longer a partner and that he has no interest in the firm or in any of its business or assets, and also written assignments to the remaining partners of all insurance policies kept in force by him pursuant to paragraph 23, such assignments to be on the forms provided or designated by the companies issuing the policies.

"Book value" is defined in article 27 of the articles of partnership as follows:

27. The amount of capital contributed by each partner and the amounts of his share of the earnings left in the business, his accrued salary, and of advances to him by way of loan or against future anticipated distributions shall be kept in one or more separate accounts as the partners find convenient. The net balance of these accounts standing to the credit of a partner shall be considered as the book value of his interest in the partnership as carried on the books of the partnership. In determining the value or the book value of a deceased or a retiring partner's interest, no value shall be assigned to good will, to the right to use the firm name, or to office records such as, but not limited to, lists of clients, files, or statistical data.

On or about January 21, 1957, the other partners voted to expel Smith as a member of Geophoto. Geophoto transferred to Smith from partnership property on January 21, 1957, $77,000 in the form of an Oldsmobile car valued at $4,259.29 and a check in the amount of $72,740.71. Also on January 21, 1957, Smith executed a memorandum

agreeing that he had withdrawn as a partner and had no interest in the partnership or in any of its business or assets.

Geophoto's articles of partnership contain no covenant or agreement that a withdrawing or retiring partner would not compete with Geophoto after his withdrawal or retirement. In fact, Smith did continue in the same business in competition with Geophoto after his withdrawal therefrom.

The book value of Smith's interest in Geophoto on January 21, 1957, was $53,264.61. Petitioners had reported as ordinary income Smith's share of the accounts receivable by reason of the fact that the partnership kept its books and reported its income on an accrual method of accounting.

Although at variance with the value of Smith's share of partnership net worth and incorrect in that respect, the following method was used to compute the payment of $77,000 paid to Smith on January 21, 1957:

| | |
|---|---:|
| Smith's share of partnership net worth at Dec. 31, 1956 | $53,968.34 |
| Premium: 40% of first $50,000 | 20,000.00 |
| 15% of excess over $50,000 | 595.25 |
| Additional premium to bring payment to an even amount | 390.96 |
| Salary from Jan. 1, 1957, through Jan. 21, 1957 | 2,045.45 |
| | 77,000.00 |

Petitioners reported on their return for the year 1957 the excess of the payment over the book value of Smith's partnership interest as capital gain, including the portion of such excess that represented Smith's salary from January 1, 1957, to January 21, 1957.

Smith's interest in Geophoto Services was liquidated when he retired therefrom on January 21, 1957. The provisions of the articles of partnership under which Smith was retired did not provide for a payment to him with respect to goodwill.

### OPINION.

Respondent maintains that the gain of $23,735.39 on liquidation of Smith's interest in Geophoto is taxable as ordinary income under section 736(a)[1] of the Internal Revenue Code of 1954,[2] $2,045.45 being taxed as a guaranteed payment under paragraph (2) thereof, and the

---

[1] SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

(a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GUARANTEED PAYMENT.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—

(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.

[2] All statutory references are to the Internal Revenue Code of 1954.

remainder as a distributive share of partnership income under paragraph (1).

Petitioners argue that the entire gain is a payment for goodwill provided for in the partnership agreement and is to be treated as a capital gain under section 736(b),[3] especially paragraph 2(B) thereof.[4]

Respondent replies that the gain is in the nature of a mutual insurance or deterrent to hasty decisions to expel a partner. See sec. 1.736–1(a)(3), Income Tax Regs.; 6 Mertens, Federal Income Taxation, sec. 35.76, p. 226 (Zimet ed. 1957). Respondent maintains that, if the payment is for goodwill, it is not provided for in the partnership agreement and thus does not qualify for capital gains treatment under section 736(b).

Section 736(b)(1) provides sale or exchange treatment for payments in exchange for the outgoing partner's interest in partnership property. Paragraph (2) provides that such payments do not include payments for unrealized receivables (subparagraph (A)) or goodwill (subparagraph (B)). However, subparagraph (B) contains its own internal exception, "except to the extent that the partnership agreement provides for a payment with respect to good will." Petitioners argue that the payment is for goodwill and that the partnership agreement provided for such a payment. Therefore, say petitioners, such payment falls within the internal exception of section 736(b)(2)(B) which causes it to fall within the general rule of section 736(b)(1).

Smith was bought out under article 25 of the partnership agreement, set forth *supra*. This article provides in detail for the method of computation of the amount due an outgoing partner under the circumstances presented here. It does not state that any part of the payment is for goodwill. Nor does any other provision of the partnership agreement state that any part of the payment computed under article 25 is to be for goodwill.

---

[3] SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

(b) PAYMENTS FOR INTEREST IN PARTNERSHIP.—

(1) GENERAL RULE.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).

(2) SPECIAL RULES.—For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for—

(A) unrealized receivables of the partnership (as defined in section 751(c)), or

(B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.

[4] Both parties treat the stipulated book value as equal to Smith's basis for his partnership interest. Petitioners do not claim that any part of the gain is attributable to Smith's interest in partnership property other than goodwill.

The Code language requires that the partnership agreement provide for a payment with respect to goodwill in order to cause that payment to be classified within the internal exemption of section 736(b)(2)(B).

It does not appear that this clause has been judicially construed since its initial enactment in the 1954 Code. The committee reports with regard to this section do not indicate whether this means that the partnership agreement must specifically denominate a payment as being for goodwill or whether it is sufficient, for the purpose of this exception, that the intent of the instrument is to provide for goodwill. A third possible approach might be for this Court to examine the circumstances and determine for itself the nature of the premium provided for regardless of how it was denominated or intended in the partnership agreement.

The committee reports' general discussions of the partnership provisions indicate great concern with the uncertainty of the law in this field and an intent to create simplicity wherever possible.[5]

A requirement that in every case courts search for the intent of the partners or attempt their own characterization of premiums provided for in partnership agreements would substantially eliminate the aspect of certainty and simplicity sought for by Congress. We cannot say that such a search is never appropriate under the present statutory language.[6] However, we see nothing in the record and briefs before us that justifies an interpretation of the statute requiring or permitting us to do other than ascertain whether the partnership agreement refers to the premium in question as goodwill.

We conclude that the intent of Congress will best be served by construing the statutory language here at issue as requiring the partnership agreement to denominate a payment in liquidation of an outgoing partner's interest as being goodwill in order to cause that payment to be classified within the internal exemption of section 736(b)(2)(B). See Little, "Partnership Distributions Under the

---

[5] XXII. Partners and Partnerships.

The existing tax treatment of partners and partnerships is among the most confused in the entire income tax field. The present statutory provisions are wholly inadequate. The published regulations, rulings, and court decisions are incomplete and frequently contradictory. As a result partners today cannot form, operate, or dissolve a partnership with any assurance as to tax consequences.

This confusion is particularly unfortunate in view of the great number of business enterprises and ventures carried on in partnership form. It should also be noted that the partnership form of organization is much more commonly employed by small businesses and in farming operations than the corporate form.

Because of the vital need for clarification, your committee has undertaken the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws. In establishing a broad pattern applicable to partnerships generally, the principal objectives have been simplicity, flexibility, and equity as between the partners. (H. Rept. No. 1337, 83d Cong., 2d Sess., 1954, p. 65; S. Rept. No. 1622, 83d Cong., 2d Sess., 1954, p. 89.)

[6] See footnote 8, *infra.*

Internal Revenue Code of 1954," 10 Tax L. Rev. 335, 353 (1955); Surrey and Warren, Federal Income Taxation 1152 (1960); Tenen, "Tax Problems of Service Partnerships," 16th Ann. N.Y.U. Tax Inst. 137, 160 (1958); Peril, "Tax Aspects of a Partner's Withdrawal from a Partnership," 38 Taxes 798, 809 (1960).

This interpretation will also make for the flexibility and equity between the partners stressed by Congress. It will allow the partners flexibility in that they may determine the tax consequences of a liquidation payment by the choice of words in the partnership agreement.[7] Since the test to be applied will normally be the relatively mechanical one of searching for a particular phrase, there will be much less likelihood of inequity resulting from failure on the part of a taxpayer to carry his burden of proof.

We conclude that the partnership agreement did not provide for a payment with respect to goodwill. Since petitioners do not claim any part of the payment is attributable to Smith's interest in partnership property other than goodwill, the payment cannot qualify for capital gains treatment under section 736(b)(1). Under these circumstances it is unnecessary for us to determine whether the payment was for goodwill, as petitioners maintain, or a type of mutual insurance, as respondent suggests. In either event, the general rule of section 736(a) applies and, under the facts of this case, the gain is ordinary income to petitioners.[8]

Petitioners occasionally advert to section 741,[9] but do not seriously contend it applies except insofar as section 736(b)(1) would cause it to apply. Here, the partnership agreement allowed the remaining partners to determine if the $77,000 would be paid by the remaining partners or by the partnership. The payment was by the partnership and nothing in the record justifies a conclusion that Smith's partnership interest was purchased rather than liquidated.

---

[7] See *Commissioner* v. *Lester*, 366 U.S. 299 (1961), where the Supreme Court construed a provision for treatment of alimony payments under the 1939 Code as meaning that, "the Congress was in effect giving the husband and wife the power to shift a portion of the tax burden from the wife to the husband by the use of a simple provision in the settlement agreement which fixed the specific portion of the periodic payment made to the wife as payable for the support of the children. Here the agreement does not so specifically provide." *Id.* at 304. The Court unanimously concluded that " 'a sufficiently clear purpose' on the part of the parties" would not satisfy the statutory requirements for taxing to the husband the payments there involved. *Id.* at 305.

[8] Of course, if it is determined that the partnership agreement provided for a payment with respect to goodwill, then the statute would oblige us to determine if the payment in fact was for "good will of the partnership."

[9] SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE.
In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).

Since petitioners will be required to treat both distributive shares of partnership income and guaranteed payments as ordinary income, it is not necessary for us to allocate the gain between distributive shares and guaranteed payments.

Reviewed by the Court.

*Decision will be entered for the respondent.*

WITHEY, DRENNEN, and SCOTT, *JJ.*, concur in the result.