V. Zay SMITH, and Ida Smith, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7085.

United States Court of Appeals Tenth Circuit.

Dec. 18, 1962.

Rehearing Denied April 3, 1963.

Frank M. Cavanaugh, Denver, Colo., for petitioners.

Melva M. Graney, Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Arthur I. Gould, Attorneys, Department of Justice, were with her on the brief), for respondent.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

This case is here on the Smiths' Petition To Review a decision of the Tax Court of the United States which was adverse to them.[1]

The facts necessary for our disposition of the case are not in dispute. In January, 1947, V. Zay Smith (petitioner) and three other individuals formed a partnership known as Geophoto Services (Geophoto) for the purpose of engaging in the business of evaluating geological structures based upon aerial photography, which was to be used in the search for petroleum and petroleum reserves. Petitioner, at the time of World War II, was a geologist and, from his experience as a photo intelligence officer in the Navy, conceived the idea of using aerial photography for evaluating geological structures in the search for oil and petroleum.

The original partnership agreement was for a period of five years. Immediately prior to its expiration and on December 31, 1952, the articles of partnership were revised to provide a means of expelling one of the partners.[2]

The partnership prospered during the next four years of the 5 year period of the partnership agreement, with petitioner receiving substantial net income for his share.[3] In January, 1957, the other three partners voted to expel petitioner as a partner in Geophoto. In accordance with paragraph 25 of the revised articles, petitioner received the consideration agreed upon therein.[4] The total amount of $77,000.00 was paid to petitioner in the form of a check for $72,-

---

1. V. Zay Smith, 37 T.C. 1033.

2. Paragraph 25 of the revised articles provided:

    "If a majority of the partners at any time decide * * * that some other partner (hereinafter referred to as specified partner) [should] cease to be a member of the partnership, then * * *, the said majority, by their unanimous vote, and upon tender to the specified partner of the consideration agreed to in this paragraph 25 may expel the specified partner, * * *. The amount to be paid to the specified partner on his expulsion as the agreed consideration for his said interest is the then book value of his interest in the partnership as carried on the books of the partnership plus a premium equal to forty (40%) percent of so much of such book value as does not exceed $50,000.00, plus 15 (15%) percent of so much of said book value as exceeds $50,000.00, but does not exceed $80,000.00, plus seven and one-half (7½) percent of so much of said book value as exceeds $80,000.00, but does not exceed $100,000.00 (no premium to be payable on account of any part of the book value over $100,000.00). * * *."

3. 1953 — $42,487.40; 1954 — $49,904.65; 1955 — $42,402.47; and 1956 — $43,-900.82.

4. Such consideration may be summarized as follows:

| | | |
|---|---|---:|
| 1. | Total net worth of the partnership as of Dec. 31, 1956. | $215,873.34 |
| 2. | Petitioner's ¼ share | 53,968.34 |
| 3. | Premium—40% of $50,000.00 | 20,000.00 |
| | 15% on capital over $50,000.00 | 595.25 |
| 4. | Additional premium to increase amount to even figure | 390.96 |
| 5. | Salary from 1–1–57 to 1–21–57 | 2,045.45 |
| | Total | $ 77,000.00 |

740.71 and an automobile of an agreed upon value of $4,259.29. It was stipulated, however, that the book value of petitioner's interest in the partnership on the date in question was $53,264.61, thereby leaving a payment to him of $2,045.45 as salary and a payment of $21,689.94 as a "premium", for a total payment over and above his partnership interest of $23,735.39.

In their income tax return for the year 1957, petitioners reported the excess over and above his partnership interest in the amount of $23,735.39 as a capital gain—this figure includes the salary payment of $2,045.45. The Commissioner of Internal Revenue determined that the entire excess of $23,735.39 was ordinary income and, accordingly, made a deficiency assessment of $6,992.20 in their income tax for 1957.

Petitioners thereafter filed a petition with the Tax Court alleging that the Commissioner, in determining taxable income for the year 1957, erroneously included the $23,735.39 payment as ordinary income and requested the Tax Court to determine that there was no deficiency due on the 1957 income tax. The Commissioner's position before the Tax Court was that the $23,735.39 payment to peti-

tioner was in liquidation of his interest in the partnership and, accordingly, it was taxable as ordinary income under Section 736(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 736(a).[5] Specifically, the Commissioner contended that the $2,045.45 salary payment should be taxed as a guaranteed payment under paragraph (2) of subsection (a) and the remainder as a distributive share of partnership income under paragraph (1) thereof.

Petitioners argued that the questioned amount was a payment for "good will" and should be treated as a capital gain under section 736(b) of the Act, 26 U.S.C. § 736(b).[6] Specifically, they urged that paragraph (2) (B) of subsection (b) applied. Beyond any question, the $2,045.45 was ordinary income and no further discussion of that item is necessary.

The Tax Court rejected petitioners' contention and, in holding that the questioned amount should be treated as ordinary income, acknowledged this was a case of first impression. The provisions of Section 736 first became embodied in the tax law by the enactment of the 1954 Internal Revenue Code. This was the first time the Congress attempted to specifically cover by statute the tax situa-

5. "Payments considered as distributive share or guaranteed payment.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—

"(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

"(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership."

Section 707(c), above referred to, is as follows:

"To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses)."

6. "(1) General rule.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).

"(2) Special rules.—For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for—

"(A) unrealized receivables of the partnership (as defined in section 751 (c), or

"(B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will."

tion arising when a partnership interest is in fact liquidated by payments from the partnership to the retiring or withdrawing partner. The situation here is not that of a partner selling his interest to another partner or a third party. If that was the situation, the government concedes, and we agree, that Section 741 of the Internal Revenue Code of 1954, 26 U.S.C. § 741, would be applicable, as contended by the taxpayer. We agree with the Tax Court that under the facts Section 736 provides the proper tax treatment.

From a careful reading of Section 736 and consideration of the Senate Finance Report [7] made at the time the new legislation was before the Congress, the intended scope of such Section appears clear. Paragraph (2) (B) of subsection (b) exempts from ordinary income treatment payments made for good will only when the partnership agreement so provides specifically and does not permit an intent to compensate for good will to be drawn from the surrounding circumstances as the taxpayer here urges us to do. In fact, the partnership agreement here specifically states " * * * In determining the value or the book value of a deceased or retiring partner's interest, no value shall be assigned to good will, * * * * "

The discussion in 6 Mertens, Law of Federal Income Taxation, § 35.81, pp. 232–233, of the questioned statute supports the position of the government:

"Partnership good will has an ambivalent character under Section 736 of the 1954 Code. Because of the difficulties on the one hand of valuing good will and on the other hand the inequities which might result if good will were required to be disregarded in every case, Section 736(b) (2), in effect, permits an election as to the treatment of partnership good will.

"If the partnership agreement provides for a specific payment as to good will and such amount is not in excess of the reasonable value of the partner's share of good will, good will is considered a partnership asset and payments with respect thereto are treated as 'Section 736 (b) Payments.' The capitalizing of good will may be desirable from the point of view of the retiring partner or deceased partner's successor. The retiring partner is entitled to capital gain treatment on the amount of the payments allocable to good will. The deceased partner's successor will have a basis equal to the date of death valuation for payments allocable to good will. While this treatment is beneficial to the retiring partner or deceased partner's successor, the continuing partners will not be allowed a deduction or exclusion for such payments.

"On the other hand, if the partnership agreement does not treat good will as partnership property under Section 736(b), the payments relating thereto fall under Section 736 (a). Such payments are taxable as ordinary income to the recipient, and may be excluded from the current income of the partnership or deducted therefrom. The treatment of good will under Section 736(a) is favorable to continuing partners since they are permitted to expense the cost of acquiring the withdrawing partner's interest in partnership good will.

7. 3 U.S.Cong. & Adm.News (1954) p. 5037 states:
"Special rules are provided in subsection (b) (2) so as to exclude certain items from the application of subsection (b). Thus, payments for an interest in partnership property under subsection (b) do not include amounts paid for unrealized receivables of the partnership. Also excluded from subsection (b) are payments for an interest in partnership goodwill, except to the extent that the partnership agreement provides for payments with respect to goodwill. Where the partnership agreement provides for payments with respect to goodwill, such payments may not exceed the reasonable value of the partner's share of partnership goodwill."

"The treatment of good will under the 1954 Code would appear to be one of the principal tax factors to be taken into account in drafting partnership agreements. In most cases it would be desirable for the partners to agree in advance as to whether partnership good will is to be capitalized or not. If the partnership agreement fails to provide for the treatment of good will, the agreement may be so amended at the time of termination of an interest. Section 761(d) of the 1954 Code also permits a partnership agreement to be modified up to the time for filing the partnership return for the taxable year. It is doubtful, however, that the remaining partners could act adversely to the interest of the withdrawing partner after he had left the partnership."

For additional expressions of the same view, see Rabkin and Johnson, Federal Income, Gift and Estate Taxation, § 16.11 (5), pp. 1678–1679; Tenen, Tax Problems Of Service Partnerships, 16 N.Y.U. Institute on Federal Taxation 137, 158–160 (1958); Egger, Sales of Partnership Interests and Death or Retirement of Partner, 15 N.Y.U. Institute on Federal Taxation 115, 119–120 (1957).

The case of Commissioner of Internal Revenue v. Lester, 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306, is analogous to this case. It involved a situation where a divorced taxpayer and his former wife entered into a written agreement for periodic payments by him to his former wife. The agreement provided that in the event any of the parties three children should marry, become emancipated or die, the payments should "be reduced in a sum equal to one-sixth of the payments which would thereafter otherwise accrue." The taxpayer deducted the whole of these periodic payments in the taxable years of 1951 and 1952. The government sought to recover tax deficiencies for those years equal to one-half of the periodic payments made contending that the quoted language of the written agreement sufficiently identified ½ of the periodic payments as having been "payable for the support" of the taxpayer's minor children under § 22(k) [8] of the Internal Revenue Code of 1939 and, therefore, not deductible by him under § 23(u) of the Code. The Supreme Court held "that the Congress intended that, to come within the exception portion of § 22(k), the agreement providing for the periodic payments must specifically state the amounts or parts thereof allocable to the support of the children" (366 U.S. at page 301, 81 S.Ct. at page 1345) and said that by this statute "the Congress was in effect giving the husband and wife the power to shift a portion of the tax burden from the wife to the husband by the use of a simple provision in the settlement agreement which fixed the specific portion of the periodic payment made to the wife as payable for the support of the children. Here the agreement does not so specifically provide." (366 U.S. at 304, 81 S.Ct. at 1347). The court also noted that "It [the statute] does not say that 'a sufficiently clear purpose' on the part of the parties would satisfy" but "It says that the written instrument must 'fix' that amount, or 'portion of the payment' which is to go to the support of the children." (366 U.S. at page 305, 81 S.Ct. at page 1347).

This reasoning would appear to be particularly applicable here and we think the payment in question should be treated as ordinary income rather than capital gain since the articles of partnership do not specifically provide that the payment is for good will. If intent is to be determined by something other than the plain language of the partnership agree-

8. The pertinent portion of § 22(k) reads as follows:

"* * * This subsection [allowing deductions] shall not apply to that part of any such periodic payment *which the terms of the * * * written instru-* *ment fix*, in terms of * * * a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * *" (Emphasis supplied.)

ment, uncertainty and confusion will be-cloud the issue and the efforts of Congress to clarify a complex situation will go for naught. Important, also, is the fact that this result treats fairly both the expelled partner and the remaining partners as the tax consequences are determined in advance by the contract to which they all agreed.

The decision of the Tax Court is Affirmed.