DANIEL COVEN AND RUTH COVEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 973-74.    Filed May 18, 1976.

_____

*David R. Andelman* and *Jonathan J. Margolis*, for the petitioners.

*Barry J. Laterman*, for the respondent.

WILES, *Judge:* Respondent determined deficiencies in petitioners' income taxes as follows:

| Year | Deficiency | Year | Deficiency |
|------|-----------|------|-----------|
| 1967 | $9,298.92 | 1969 | $7,893.80 |
| 1968 | 7,415.36 | 1970 | 14,355.00 |
| | | | 38,963.08 |

Petitioners have conceded some issues, and the only issue for decision is whether certain payments received by petitioners upon retirement of Daniel Coven from the partnership of Coven & Suttenberg constituted (1) compensation for services under section 61;[1] (2) payments by the partnership in liquidation of Coven's partnership interest, taxable as ordinary income under section 736; or (3) payments by Suttenberg individually for the purchase of Coven's partnership interest, taxable as capital gains under section 741.

### FINDINGS OF FACT

Some facts were stipulated and are found accordingly.

The petitioners, husband and wife, resided in Newton, Mass., during the years in issue and when they filed their petition herein. They filed joint Federal income tax returns for 1967, 1968, 1969, and 1970 with the Internal Revenue Service Center, Andover, Mass.

In 1946, Daniel Coven (sometimes hereinafter petitioner) and Lawrence L. Suttenberg, certified public accountants, formed the partnership of Coven & Suttenberg (sometimes hereinafter the partnership) to engage in the practice of public accounting. Jacob I. Sherman, Louis Rosenberg, and Allan Baker, all certified

---

[1] Statutory references are to the Internal Revenue Code of 1954, as amended.

accountants, later also became partners in that firm. Petitioner and Suttenberg each held a 38-percent interest in the partnership, and the three other partners held the remaining 24 percent. The partnership had no written formal agreement, but operated on an oral understanding.

The partnership's practice included tax advice, auditing, and management consulting services. The partners accordingly were familiar with the Internal Revenue Code of 1954. The partnership was financially successful.

Petitioner suffered a heart attack in August of 1965. He was disabled until October of that year, when he resumed work on a part-time basis. As a result of his illness, petitioner decided to reduce his activities. He felt the only way to realistically achieve this goal was to get out of accounting completely. It was accordingly his intent to leave the field of accounting and not return to it. Suttenberg was aware of these intentions.

In November of 1965, petitioner thus discussed his retirement from accounting practice with Suttenberg. Negotiations on this matter were carried on entirely between petitioner and Suttenberg. During the negotiations, petitioner and Suttenberg determined that the value of his interest in the partnership was approximately $300,000. They agreed that petitioner would receive $25,000 annually for life and that his wife would receive equal annual amounts for any period during which she survived him. Although petitioner was originally under the impression that his retirement agreement would be with the partnership, he subsequently heard from Suttenberg that Suttenberg himself was going to acquire petitioner's interest; Suttenberg indicated to petitioner that it would be to Suttenberg's advantage to own petitioner's partnership interest individually should someone else come into the partnership.

Subsequent to the negotiations in November or early December of 1965 and before January 1, 1966, petitioner and Suttenberg became aware of the possibility of merger of their partnership with the Boston office of Ernst & Ernst, an accounting firm which had approximately 120 professional people in that office. On January 1, 1966, petitioner and Suttenberg signed an agreement (hereinafter agreement) which provided in part as follows:

AGREEMENT made as of January 1, 1966, by and between DANIEL COVEN * * * and LAWRENCE L. SUTTENBERG * * *

* * *

WHEREAS, SUTTENBERG is willing to acquire COVEN'S interest in the said partnership,

* * * the parties hereto mutually agree as follows:

1. The value of COVEN'S interest in the said partnership as of December 31, 1965 is his capital account * * * plus a sum of $300,000.00 for goodwill.

2. SUTTENBERG shall pay * * * the sum of $25,000.00 * * * in semi-monthly installments of $1,041.66 on the 1st and 16th days of each month, beginning 1/1/66.

3. If COVEN predeceases his wife, RUTH COVEN, SUTTENBERG shall continue to make, or cause to be made, such semi-monthly payments to COVEN'S said wife as long as she shall live * * *

4. If both COVEN and his said wife should die within twenty-five years from January 1, 1966, SUTTENBERG shall pay, or cause to be paid, to the estate of the later to die of COVEN and his said wife, the remaining value of COVEN'S interest in the said partnership as of the date of such death, as shown on the annexed schedule showing the value of COVEN'S interest at the end of each year for twenty-five years * * *

5. * * * SUTTENBERG agrees to keep in full force and effect a certain life insurance policy of which COVEN is the beneficiary written on the life of SUTTENBERG in the sum of $50,000.00 and to obtain and keep in full force and effect a $200,000.00 declining fifteen year term life insurance policy, of which COVEN shall be the beneficiary, written on the life of SUTTENBERG. * * *

6. To further assure COVEN that all of the payments provided for by this agreement will be made, SUTTENBERG is depositing with COVEN certain securities as collateral security for the performance of this agreement. * * * In the event there is an excess of collateral over amount due COVEN then SUTTENBERG will take back the excess in collateral of SUTTENBERG'S choice providing it does not exceed the amount due SUTTENBERG.

* * *

8. If both COVEN and his said wife should die after twenty-five years of payments have been made in accordance herewith, all securities then held as collateral for the performance of this agreement shall be returned to SUTTENBERG. * * *

9. If SUTTENBERG should die before twenty-five years of payments have been made, and either COVEN or his said wife is alive at SUTTENBERG'S death, SUTTENBERG'S estate shall pay to COVEN * * * or * * * COVEN'S said wife, the difference between the sum of the proceeds of the said insurance policies received by COVEN or his said wife and the value of COVEN'S interest in the said partnership as of the date of SUTTENBERG'S death as computed in accordance with paragraph 4 hereof. * * *

10. If the partnership of Coven & Suttenberg is sold to or merged with another firm of public accountants, SUTTENBERG may either continue to make, or cause to be made, the payments hereinabove provided for or he may pay COVEN, or if he be then dead, COVEN'S said wife, a lump sum, the amount of which shall be determined by arriving at the value of COVEN'S

interest in the said partnership at the time of the sale or merger in accordance with paragraph 4 hereof. * * *

11. * * * In the event of a proposed sale or merger * * * before January 1, 1968, and if such proposed sale or merger were consummated SUTTENBERG would not wish to make the payment provided for in paragraph 10 hereof, such sale or merger may nevertheless be consummated if COVEN * * * shall receive all of the cash paid to SUTTENBERG at the time of the sale or merger and shall receive all of the deferred payments to be made to SUTTENBERG until COVEN has received the value of his interest in the said partnership as of the date of such sale or merger, computed in accordance with paragraph 10 hereof * * *

12. If the partnership * * * is sold or merged * * * after January 1, 1968, COVEN, if he be alive, or his said wife, if he be then dead, shall receive the value of his interest in the firm * * * in accordance with paragraph 10 * * * except that if the buyer's obligation is to pay less then [sic] the value of COVEN'S interest computed as aforesaid, SUTTENBERG promises and agrees to make up the deficiency * * *
* * * .

16. When SUTTENBERG has paid, or caused to be paid, all payments herein provided for, SUTTENBERG shall become and be the full owner of COVEN'S interest in the said partnership and COVEN shall have no further interest therein.
* * *

It is the intention of the parties hereto to formalize this arrangement sometime after the date of signing of this agreement. Until that is accomplished, however, this agreement remains in full force and effect and binding upon the parties.

SCHEDULE OF VALUES OF COVEN'S INTEREST

AS OF THE END OF EACH YEAR

| 1st year | Dec. 31, 1966 | $204,050.00 |
|---|---|---|
| 2nd year | 7 | 197,751.25 |
| 3rd year | 8 | 191,700.03 |
| 4th year | 9 | 185,291.53 |
| 5th year | 70 | 178,724.84 |
| 6th year | 1 | 171,992.97 |
| 7th year | 2 | 165,092.79 |
| 8th year | 3 | 158,020.11 |
| 9th year | 4 | 150,770.61 |
| 10th year | 5 | 143,339.87 |
| 11th year | 6 | 135,723.38 |
| 12th year | 7 | 127,916.46 |
| 13th year | 8 | 119,914.37 |
| 14th year | 9 | 111,711.89 |
| 15th year | 80 | 103,305.03 |
| 16th year | 1 | 94,687.66 |
| 17th year | 2 | 85,854.85 |

| | | |
|---|---|---|
| 18th year | 3 | 76,801.22 |
| 19th year | 4 | 67,521.26 |
| 20th year | 5 | 58,009.28 |
| 21st year | 6 | 48,259.52 |
| 22nd year | 7 | 38,266.00 |
| 23rd year | 8 | 28,022.65 |
| 24th year | 9 | 17,523.22 |
| 25th year | 90 | 6,761.30 |

* * *

GENERAL NOTE. In all instances where reference is made to the schedule of values of COVEN'S interest as of the end of each year, the figures shown are for the goodwill portion of COVEN'S interest only and do not include any part of his capital account * * *

Petitioner and Suttenberg intended that a later agreement would supersede this agreement, but this agreement was binding on them until such later agreement was signed. This agreement did not restrict petitioner's activities or require petitioner to render services to the partnership. Furthermore, this agreement contains no indication that it was made other than by Suttenberg individually, i.e., by the partnership.

Petitioner and Suttenberg executed a second agreement, entitled "Consultant Contract," on January 3, 1966. That agreement (hereinafter Consultant Contract) provided as follows:

### CONSULTANT CONTRACT

In connection with the withdrawal of DANIEL COVEN from membership in the accounting firm of Coven & Suttenberg, effective beginning January 1, 1966, Messrs. Coven and Suttenberg agree as follows:

(1) Beginning January 1, 1966, Mr. Coven shall act as Consultant to the accounting practice of Coven and Suttenberg. In such capacity Mr. Coven, to the extent his health and personal and business commitments permit, and only at his convenience, shall respond to reasonable requests for advice and consultation on matters connected with such practice.

(2) For such services, Mr. Suttenberg shall pay to Mr. Coven (or to his present wife if she survives him) compensation at the rate of $25,000 per year, in equal monthly installments, so long as either Mr. Coven or his present wife shall live. Mr. Coven shall be reimbursed by Mr. Suttenberg for Mr. Coven's out-of-pocket expenses incurred in rendering such services.

(3) Mr. Coven may engage in the practice of public accountancy in any capacity, except that he may not represent in such capacity, any of the clients of Coven and Suttenberg (or the clients of an assignee of this contract), who are such clients at that time. However, nothing herein shall prevent Mr. Coven from providing consulting services to any persons (individuals, partnerships or corporations, or other entities), including clients of Coven and Suttenberg, nor shall prevent Mr. Coven from becoming an employee, officer or director of any such persons.

(4) Should both Mr. Coven and his present wife die prior to December 31, 1990, Mr. Suttenberg shall pay to the estate of the survivor, in a lump sum, the amount shown on the attached Annex A opposite the calendar year in which the death of the survivor occurred.

(5) Mr. Suttenberg's rights under this Contract may be assigned by him to any accounting firm which he may form or which succeeds Coven and Suttenberg in its practice of accountancy. Upon such assignment, the assignee shall assume and perform all of Mr. Suttenberg's obligations under this Contract and, if Mr. Coven consents in writing to such assignment, Mr. Suttenberg shall thereupon be relieved from all his obligations hereunder. Such consent is hereby given by Mr. Coven should the assignee be Ernst & Ernst, a partnership with its headquarters in Cleveland, Ohio, but there shall be no other assignment or further assignment by said Ernst & Ernst without the express written consent of Mr. Coven.

IN WITNESS WHEREOF, the parties hereto have each executed, sealed, and delivered this Contract as of the 3rd day of January, 1966.

(S) DANIEL COVEN

(S) LAWRENCE L. SUTTENBERG

[Annex A contains a payment schedule for the estate of the survivor of petitioner and his wife with amounts identical to those contained in the agreement of January 1, 1966.]

The Consultant Contract was the final agreement between the parties; it superseded the agreement. During negotiations for the contract, petitioner and Suttenberg discussed the possible tax implications of petitioner's withdrawal from the partnership. Both understood the possible tax effects of the contract, and Suttenberg believed that petitioner would report payments received thereunder as ordinary income.

When the Consultant Contract of January 3, 1966, was signed, petitioner and Suttenberg knew that merger with Ernst & Ernst was possible. They executed a formal merger agreement with that firm in March of 1966.

Suttenberg individually made payments to petitioner under the Consultant Contract until May 1, 1966. Suttenberg deducted these payments on his individual Federal income tax return, and they did not appear on the Coven & Suttenberg partnership return for that period.

The partnership continued to operate until May 1, 1966. On that date, there were four partners in the partnership: Suttenberg, Sherman, Rosenberg, and Baker. On May 1, 1966, the three minority partners left the partnership. They were compensated

for capital accounts but received no payment for partnership goodwill.

On or about May 1, 1966, the partnership merged into Ernst & Ernst. Pursuant to the merger contract, under which Suttenberg became a partner in Ernst & Ernst, the Consultant Contract was assigned to that firm. Ernst & Ernst as a result has made the payments required thereunder since May 1, 1966. A letter of May 1, 1966, from Ernst & Ernst to petitioner in connection with the assignment refers to the Consultant Contract "between you and Lawrence L. Suttenberg" and does not refer to any obligation of Coven & Suttenberg to make payments thereunder.

Petitioner's activities have not been restricted by the Consultant Contract. Petitioner has represented clients of the former partnership and has not declined any work because of the Consultant Contract. Matters on which Suttenberg has contacted petitioner have been so minor that they required only a telephone call. Suttenberg did not feel a formal consulting agreement would have been necessary for him to have felt justified in calling petitioner on these matters. Petitioner has not in fact ever formally "consulted" with Coven & Suttenberg or Ernst & Ernst under the Consultant Contract. Also, petitioner did not expect to render consulting services when he signed the Consultant Contract.

Since withdrawing from the partnership, petitioner has acted as a management consultant; much of his consulting has been involved with acquisitions, mergers, and other problems in which tax considerations are important.

On his Federal income tax returns for the years in issue, petitioner reported all payments received under the Consultant Contract as capital gains realized from sale of a partnership interest.

### OPINION

The only issue for decision is whether payments received by petitioner under the Consultant Contract of January 3, 1966, constituted ordinary income or capital gain. Respondent contends the payments constituted ordinary income as payments received in liquidation of a partnership interest under section 736[2] or, in

---

[2] SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

(a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GUARANTEED

the alternative, that the payments were compensation for services under section 61.[3] Petitioner contends that the payments resulted from sale of his partnership interest to another partner and thus qualified for capital gains treatment under section 741.[4] We agree with petitioner.

Section 736 provides, in part, that payments made (by a partnership) "in liquidation of the interest of a retiring partner * * * shall * * * be considered—* * * (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership."[5] Such payments constitute ordinary income. Section 741, by contrast, provides that a partner who sells his interest in a partnership (for example, to another partner or an outsider) realizes capital gain, except for certain unrealized receivables and inventory items.

---

PAYMENT.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—
 (1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or
 (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.
(b) PAYMENTS FOR INTEREST IN PARTNERSHIP.—
 (1) GENERAL RULE.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).
 (2) SPECIAL RULES.—For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for—
  (A) unrealized receivables of the partnership (as defined in section 751(c)), or
  (B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.
[3] SEC. 61. GROSS INCOME DEFINED.
 (a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
 (1) Compensation for services, including fees, commissions, and similar items;
[4] SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE.
 In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).
[5] SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP.
 (c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).

Compensation for services, of course, constitutes ordinary income under section 61.

The Consultant Contract provides that payments received by petitioner constitute compensation for services. Petitioner has presented "strong proof," however, that the form of this contract did not reflect its substance. See *Ullman v. Commissioner*, 264 F.2d 305, 308 (2d Cir. 1959), affg. 29 T.C. 129 (1957); *J. Leonard Schmitz*, 51 T.C. 306, 318 (1968), affd. sub nom. *Throndson v. Commissioner*, 457 F.2d 1022 (9th Cir. 1972). Among the many factors which compel this conclusion are: (1) Consulting services were to be rendered only at petitioner's convenience, and only if his health and other business commitments permitted; (2) if petitioner and his wife died before 1991, the survivor's estate would receive a lump-sum payment, declining from $204,050 in 1966 to $6,761.30 in 1990. There is accordingly a total lack of correlation—in fact, it would be an inverse ratio—between the services rendered and the amount of these lump-sum payments; (3) payments could continue well after petitioner's death, for the duration of his wife's life, if she survived him; (4) only a few phone calls have been made to petitioner, and no formal consultation services actually have been rendered under the contract; and (5) petitioner did not expect to render consulting services when the agreement was executed.[6]

We accordingly find that petitioner has presented "strong proof" to refute the form of the Consultant Contract and also dispose of the alternative contention of respondent that payments made thereunder constituted compensation for services rendered. Petitioner's argument that respondent did not timely raise the compensation for services contention is unwarranted because the original contentions of the respective parties that a sale or liquidation occurred necessarily assume that the form of the Consultant Contract did not reflect its substance. Also, petitioner's counsel himself went to pains at trial to establish that no formal or substantive consulting services were in fact rendered under the contract; certainly surprise is absent here. In

---

[6] *Henry P. Wager*, 52 T.C. 416, 419 (1969), cited by respondent, is distinguishable on this ground, in addition to being distinguishable because of the lack of correlation between the form and substance of the Consultant Contract.

We note also that the testimony of Suttenberg that he did expect Coven to render consulting services under the Consultant Contract was not credible; indeed, we found Coven's testimony much more credible than Suttenberg's throughout the trial.

any event, the record clearly establishes that these payments do not constitute compensation for services rendered, and respondent's contention in this regard cannot be sustained.[7]

We thus must reach the issue whether payments made under the Consultant Contract resulted from liquidation by the partnership of petitioner's partnership interest, resulting in ordinary income to petitioner, or from a sale by petitioner to partner Suttenberg individually of petitioner's partnership interest, resulting in capital gains to petitioner. Congress intended to allow the parties themselves to resolve this question, as the parties' tax interests are necessarily adverse: if a retiring partner is entitled to capital gains treatment for sale of his interest to another partner, the buying partner gets no deduction for the payments; if a retiring partner must report the payments as ordinary income resulting from guaranteed payments for liquidation of his interest by the partnership, the partnership deducts the payments made to the retiring partner. See generally *Miller v. United States,* 181 Ct. Cl. 331, 337-341 (1967); *David A. Foxman,* 41 T.C. 535, 549-552 (1964), affd. 352 F.2d 466 (3d Cir. 1965); see also sec. 1.736-1(a)(4), Income Tax Regs. After considering the entire record, we are without doubt that this transaction was a sale by petitioner of his partnership interest to Suttenberg, the remaining partner, individually and hence should be accorded capital gains treatment under section 741.

The evidence is overwhelming that the transaction occurred between petitioner and Suttenberg individually. First, there is no partnership liability under either the agreement or the Consultant Contract. Both were signed by petitioner and Suttenberg individually. Although the earlier agreement is much closer to the substance of the transaction than the Consultant Contract, in both instances the parties did not intend to bind the partnership. This is especially significant in light of continued participation in the partnership by the three minority partners, who owned a 24-percent interest in the partnership until May 1,

---

[7] It is just as clear that the supposed covenant not to compete in the Consultant Contract was meaningless. Besides the factors listed above with regard to compensation for services, some of which would be equally applicable to a covenant not to compete, we note that petitioner remained free to perform consulting services for his former clients and that no time or geographic limits with regard to such a covenant were specified, all of which constitute significant departures from the usual terms of a genuine covenant not to compete.

1966; there is no basis under either of these agreements for holding those partners or the partnership liable.

Second, both petitioner and Suttenberg testified that they intended a sale between them as individuals rather than liquidation by the partnership.[8] Although petitioner's testimony is within his own self-interest, Suttenberg was called as respondent's witness. Furthermore, Suttenberg and Ernst & Ernst have a direct financial interest in deductibility of these payments to petitioner because Suttenberg is a partner in Ernst & Ernst, and Ernst & Ernst assumed liability for the payments to petitioner under the Consultant Contract. Suttenberg's testimony that a sale between individuals was intended is thus inconsistent with his pecuniary interest.

Third, payments to petitioner for the first 4 months of 1966 were made to petitioner by Suttenberg individually, not by the partnership. The belief of Suttenberg that these payments were being made in his individual capacity is confirmed by his deduction of such payments on his individual 1966 Federal income tax return.[9] Suttenberg thus acted consistently with his testimony in this regard.

Fourth, a letter from Ernst & Ernst on May 1, 1966, refers to the Consultant Contract as an agreement between petitioner and Suttenberg and shows no understanding that Ernst & Ernst was assuming an obligation of Coven & Suttenberg.

Fifth, no compensation was paid to petitioner by the partnership or by the minority partners for his interest in the partnership; it is accordingly difficult to see how the transaction could be considered a liquidation by the partnership. Cf. *David A. Foxman, supra* at 552-553.

Sixth, both the consistent testimony of petitioner and Suttenberg and the agreement of January 1, 1966, indicate that petitioner and Suttenberg negotiated a sale between themselves

---

[8] The parol evidence rule is clearly inapplicable here, one reason being that it cannot be invoked by a third party—respondent—who was not a party to the written instrument involved. *Walter Lacy,* 39 T.C. 1100, 1104 (1963), affd. 341 F.2d 54 (10th Cir. 1965); *Estate of Leon Holtz,* 38 T.C. 37, 41 (1962); *Haverty Realty & Investment Co.,* 3 T.C. 161, 167 (1944).

[9] Such payments are clearly not deductible by an individual partner for transactions arising under sec. 736 or 741; Suttenberg's rationale may have been that he was individually paying compensation to petitioner and thus could deduct it under sec. 162. In any event, that deduction is significant because of its revelation of Suttenberg's belief as to the individual nature of the contract, not because it may or may not have been substantively correct.

as individuals; such prior bargaining is also indicative of the true nature of the transaction. Cf. *David A. Foxman, supra* at 552. The terms of the earlier agreement, which provided for a sale between individuals, appear to be especially representative of the true nature of this transaction.

We therefore conclude that petitioner sold his partnership interest to Suttenberg individually. The resulting tax consequences accordingly cannot be determined by section 736, since that section applies "only to payments made by the partnership and not to transactions between the partners." Sec. 1.736-1(a)(1)(i), Income Tax Regs. See also *Karan v. Commissioner,* 319 F.2d 303, 307 (7th Cir. 1963), affg. a Memorandum Opinion of this Court; *Smith v. Commissioner,* 313 F.2d 16, 19 (10th Cir. 1962), affg. 37 T.C. 1033 (1962); *Charles F. Phillips,* 40 T.C. 157, 161 (1963); 1 Willis, Partnership Taxation, sec. 46.01, p. 606 (2d ed. 1976).[10]

Respondent contends, however, that in substance there was a liquidation by the partnership masked by the form of the Consultant Contract. The evidence is clearly and consistently to the contrary, however, as described above.

Respondent also contends that petitioner and Suttenberg, both certified public accountants familiar with income tax law, should have labeled the Consultant Contract a sale if that was in fact what it was. Although we agree that the expense and inconvenience of this litigation could have been avoided by proper drafting techniques and explicit references to the Code provisions the parties thought should be applicable, the absence of sale language is insignificant in light of the lack of correlation between the substance and form of the Consultant Contract. Furthermore, there is no language in that contract indicating that a liquidation was consummated either, as respondent would have us believe. Also, the agreement, which reflects the basic substance of this transaction, unquestionably contemplates a sale of partnership interest between partners, rather than a liquidation by the partnership or compensation for services. We

---

[10] Although the agreement made a specific allocation for goodwill, capital gains treatment under sec. 736(b)(2)(B) would still not be possible, even if that agreement were not later superseded, because sec. 736 is inapplicable to this sale between partners. Furthermore, even if sec. 736 were applicable, the Consultant Contract, which was adopted, does not make any reference to goodwill, and the partnership did not operate under a written agreement: no operative written partnership agreement specifying payments for goodwill thus existed. Sec. 736(b)(2)(B) would therefore still be inapplicable. See *V. Zay Smith,* 37 T.C. 1033, 1037 (1962), affd. 313 F.2d 16 (10th Cir. 1962).

accordingly attach little weight to the lack of sale language in the Consultant Contract.

Finally, respondent contends that the deduction of payments by Suttenberg for the first 4 months of 1966, consistent with Suttenberg's belief that petitioner would report the payments as ordinary income, indicates that the parties intended to consummate a liquidation or a contract for the compensation of services. We disagree, as the facts clearly indicate a sale of partnership interest between individuals. Indeed, Suttenberg testified that he wished to acquire petitioner's partnership interest as an individual because of possible merger with another accounting firm. In any event, inconsistent treatment of the transaction by the parties on their individual income tax returns is hardly surprising, and we attach little weight to it.[11]

We accordingly hold that petitioner correctly reported payments received pursuant to the Consultant Contract as capital gains. All other issues previously having been resolved due to concessions by petitioners, and respondent having stated on brief that a computation under Rule 155 will be unnecessary,

*Decision will be entered for the petitioners.*

---

[11] Respondent may protect himself against his asserted fear of being "whipsawed" by the parties by simply taking inconsistent positions against them. Cf. *David A. Foxman,* 41 T.C. 535, 548 (1964), affd. 352 F.2d 466 (3d Cir. 1965).