COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

JACKSON INVESTMENT COMPANY, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

WEST SHORE COMPANY, Respondent.

No. 19667.

United States Court of Appeals
Ninth Circuit.

May 27, 1965.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Michael K. Cavanaugh, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Ronald C. Roeschlaub, Austin H. Peck, Jr., Los Angeles, Cal., for respondents.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

BARNES, Circuit Judge:

The Commissioner of Internal Revenue has brought this petition to review decisions of the Tax Court (41 T.C. 675 (1964)) involving federal income taxes for the taxable years 1956 through 1958. The amounts in controversy involve distributions made by respondents, Jackson Investment Company and West Shore Company, partners in George W. Carter Company, to a retiring partner, Ethel M. Carter. Petitioner concluded that the distributions were not deductible expenses, and, consequently, assessed deficiencies against Jackson in the aggregate amount of $9,848.18 and against West Shore in the aggregate amount of $15,577.85. The Tax Court, however, rendered a decision adverse to the Commissioner. The Commissioner subsequently petitioned for review, invoking this court's jurisdiction under Section 7482 of the Internal Revenue Code of 1954.

The question presented for our consideration involves the construction of Section 736 of the Internal Revenue Code of 1954. That section, drafted as part of a series of provisions intended to clarify and simplify the tax laws with respect to partnerships, provides as follows:

"§ 736. Payments to a retiring partner or a deceased partner's successor in interest.

"(a) Payments considered as distributive share or guaranteed payment.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—

"(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

"(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.

"(b) Payments for interest in partnership.—

"(1) General rule.—Payments made in liquidation of the interest of a retiring partner to a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).

"(2) Special rules.—For purposes of this subsection, payments in exchange for an interest in Partnership property shall not include amounts paid for—

"(A) unrealized receivables of the partnership (as defined in section 751(c)), or

"(B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will."

The intended purpose of this provision was to permit the participants themselves to determine whether the retiring partner or the remaining partners would bear the tax burdens for payments in liquidation of a retiring partner's interest. Thus, under the general approach of subsection (a), the tax burden is borne

by the retiring partner—he recognizes the payments as taxable income, and the remaining partners are allowed a commensurate deduction from partnership income. Under subsection (b), the general rule conceives an approach of nonrecognition of ordinary income to the retiring partner, but places the tax burden on the partnership by denying a deduction from income for the payments. This latter subsection, however, adopts a special rule—(b) (2) (B)—in an express effort to assist the participants to decide *inter sese* upon the allocation of the tax burden. This special rule lies at the heart of the present controversy. Under this rule, payments for the good will of the partnership are deductible by the partnership (and hence recognizable as ordinary income to the retiring partner) "except to the extent that the partnership agreement provides for a payment with respect to good will." If the partnership agreement provides for a payment with respect to good will, the tax burden is allocated to the partnership—no deduction is allowed and the retiring partner need not recognize the payments as ordinary income. In the present case, petitioner contends that this exception under Section 736(b) (2) (B) applies, and thus the deductions taken by the partnership should be disallowed. We must determine, therefore, whether the parties intended to place the tax burden on the partnership by expressly incorporating into the partnership agreement a provision for payment to the retiring partner with respect to good will.

It is undisputed that the original Partnership Agreement did not contain a provision for partnership good will or a payment therefor upon the withdrawal of a partner. On May 7, 1956, however, the three partners executed an instrument entitled "Amendment of Limited Partnership Agreement of George W. Carter Co." (Tr. 62–75.) This instrument provided for Ethel Carter's retirement, and bound the partnership to compensate Ethel in the amount of $60,000.00 in consideration for her withdrawal. After the necessary adjustment of the figures, it was determined that $19,650.00 of the amount was in return for Ethel's "15% interest in the fair market value of all the net assets of the partnership." The other $40,350.00, the amount in controversy here, was referred to as "a guaranteed payment, or a payment for good will." (Tr. 66.) The $40,350.00 was paid by the partnership in three annual parts, and deductions were made for good will expense in the partnership net income for each of the years. It is these deductions that petitioner challenges.

The decision of the Tax Court (six judges dissenting), concluded that the document entitled "Amendment of Limited Partnership Agreement of George W. Carter Co." was not a part of the partnership agreement, and therefore, the exception of Section 736(b) (2) (B) was not applicable. As a result, the court held that the amounts in question were legitimate deductions from the partnership income under the terms of Section 736(a) (2). The court founded its conclusion on the fact that the "Amendment" was solely designed to effect a withdrawal of one of the partners; it was not at all concerned with any continued role for Ethel in the partnership affairs.

We cannot agree with the interpretation of the majority of the Tax Court. We find this view unduly interferes with the clear objective of the statute, i. e., to permit and enable the partners to allocate the tax burdens as they choose, and with a minimum of uncertainty and difficulty. If a partnership agreement such as the one involved here, had no provision regarding the withdrawal of a partner, and the partners negotiated to compensate the retiring partner with payments that could be treated by the recipient at capital gain rates, the statutory scheme should not be read to frustrate the parties' efforts. An amendment to the partnership agreement which incorporates the plan of withdrawal and which designates the amount payable as being in consideration for the partnership good will seems clearly to be an attempt to utilize Section 736(b) (2) (B), affording capital gain rates to the

retiring partner but precluding an expense deduction for the partnership. Simply because the subject matter of the amendment deals only with the liquidation of one partner's interest, we should not thwart whatever may be the clear intent of the parties by holding the amendment is not part of the partnership agreement. The Internal Revenue Code of 1954 expressly touches upon modifications of partnership agreements, and it gives no support to the thesis that an amendment dealing with the withdrawal of a partner cannot be considered a part of the partnership agreement. Section 761 (c) provides:

> "*Partnership Agreement.*—For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement."

We hold, therefore, in harmony with the intent of the parties to the partnership, that the "Amendment of Limited Partnership Agreement of George W. Carter Co." was a modification of the partnership agreement within the meaning of Section 761(c). As such, the requirement of a provision in the partnership agreement as specified in Section 736(b) (2) (B) is satisfied.

There remains, however, an additional requirement to call into operation Section 736(b) (2) (B), *viz.*, that the provision for payment in the partnership agreement be *with respect to good will.* As noted above, the payment of the $40,350.00 was inartistically described in the Amendment as a "guaranteed payment, or a payment for good will." The "guaranteed payment" terminology seems to expressly incorporate Section 736(a) (2), which would permit an expense deduction to the partnership, while recognizing the payments as ordinary income to the retiring partner. The "good will" language, on the other hand, would appear directed to Section 736(b) (2) (B), which results in the opposite tax consequences. In resolving this conflict, we feel the most helpful guide is to pay deference to what we may determine was the revealed intent of the parties. An examination of the entire amendment leads us to conclude that, notwithstanding the use of the words "guaranteed payment," the parties intended to invoke Section 736(b) (2) (B), not Section 736(a) (2). The Amendment expressly states the following (which we find impossible to harmonize with the majority opinion of the Tax Court or the arguments advanced by respondents in their brief):

> "It is recognized by all the parties hereto that the prior agreements among the partners do not provide for any payment to any partner *in respect to good will* in the event of the retirement or withdrawal of a partner, but George W. Carter Company will nevertheless make a payment to Ethel M. Carter *in respect to good will* as herein provided in consideration of her entering into this agreement and her consent to retire from the partnership upon the terms herein expressed." (Tr. 66.) (Emphasis added.)

The meaning of this language as well as the words chosen to express it leads to the conclusion that the $40,350.00 was to be a payment "in respect to good will," with the parties intending to be governed by the tax consequences of Section 736 (b) (2) (B). The concluding paragraph of Judge Raum's dissenting opinion in the Tax Court, joined in by five other judges, expresses in our judgment sound reasoning, and we incorporate it here as a summary statement of our viewpoint:

> "To fail to give effect to the plain language thus used by the parties is, I think, to defeat the very purpose of the pertinent partnership provisions of the statute, namely, to permit the partners themselves to fix their tax liabilities *inter sese.* Although the May 7, 1956, agreement

may be inartistically drawn, and indeed may even contain some internal inconsistencies, the plain and obvious import of its provisions in respect of the present problem was to amend the partnership agreement so as to provide specifically for a goodwill payment. This is the kind of thing that section 736(b) (2) (B) dealt with when it allowed the partners to fix the tax consequences of goodwill payments to a withdrawing partner. And this is what the partners clearly attempted to do here, however crude may have been their effort. I would give further effect to that effort, and would not add further complications to an already overcomplicated statute." (41 T.C. at 685.)

The decision of the Tax Court is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.