WILLIAM J. COONEY, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8784-73, 8840-73, 8870-73, 9101-73, 9102-73.                    Filed October 21, 1975.

---

[1] The following cases are consolidated herewith: William J. Cooney, docket No. 8784-73; Rudolph E. and Louise B. Holley, docket No. 8840-73; Thomas R. and Dianne M. Burnside, docket No. 8870-73; Glenn B. and Joyce F. Hester, docket No. 9101-73; and Otis F. and Carole L. Askin, docket No. 9102-73.

*William J. Cooney* and *John L. Thompson,* for the petitioners.
*Edward P. Phillips,* for the respondent.

104

## OPINION

The issue presented for decision requires a determination of the tax consequences to the continuing members of petitioners' law firm of the payments to the withdrawing partners. Those payments took the form of cash and the discharge of the withdrawing partners' shares of certain partnership liabilities. Four of the continuing partners, petitioners in the instant proceeding, contend that, under section 736(a), those payments were made in liquidation of the withdrawing partners'. interests in the partnership and that, consequently, such payments are deductible in computing the partnership's taxable income for 1967.

One of the withdrawing partners, who is not a party to these proceedings but was a witness at the trial, has taken the position that, within the meaning of section 741, the withdrawal transaction was a sale of his partnership interest and that the payments he received are taxable to him as capital gain. If he is correct, the payments made to the withdrawing partners would not reduce the surviving partnership's taxable income for 1967.

To protect the revenue, respondent has taken inconsistent positions—denying the deductions claimed by, petitioners but determining that the amounts received by the withdrawing

partners are taxable to them as ordinary income. In the instant proceedings, respondent takes the position that the withdrawal transaction was a sale under section 741 and not, as petitioners contend, a liquidation under section 736.

Section 741 [4] deals with the sale or exchange of a partnership interest. It provides that, except as to section 751 assets, gain or loss from the sale or exchange of a partnership interest shall be considered as the sale or exchange of a capital asset. As to the exception, section 751(a) provides that to the extent the amount of money received by a transferor in exchange for his interest in the partnership is attributable to "unrealized receivables," [5] among other items, such amount shall be considered as money realized from the sale of property other than a capital asset. Accordingly, the amount paid to a withdrawing partner from the "sale" of his partnership interest, even though attributable to unrealized receivables, is not deductible by the partnership but is treated as a capital investment. [6]

Section 736 [7] deals with the liquidation of a partnership.

---

[4] SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE.

In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).

[5] SEC. 751. UNREALIZED RECEIVABLES AND INVENTORY ITEMS.

(c) UNREALIZED RECEIVABLES.—For purposes of this subchapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for—

(1) goods delivered, or to be delivered, to the extent the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or

(2) services rendered, or to be rendered.

[6] A deduction of sorts may result in a sec. 741 sales transaction if the partnership elects the provision of sec. 754. See secs. 754, 743, and the regulations thereunder.

[7] SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

(a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GUARANTEED PAYMENT.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—

(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.

(b) PAYMENTS FOR INTEREST IN PARTNERSHIP.—

(1) GENERAL RULE.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in

Insofar as it pertains to the instant case, that section divides payments to a withdrawing partner into two categories: (1) Payments representing a withdrawing partner's interest in partnership property (other than unrealized receivables), including goodwill, to the extent the partnership agreement provides for a payment for goodwill, sec. 736(b); sec. 1.736-1(b), Income Tax Regs., and (2) payments representing the value of the withdrawing partner's share of unrealized receivables and goodwill where the partnership agreement does not provide for a payment with respect to goodwill. Secs. 736(a) and 736(b)(2); sec. 1.736-1(a)(3), Income Tax Regs. Payments in category (1) are treated as a "distribution by the partnership" (see secs. 731 and 751(b)) and are not deductible by the partnership in computing its taxable income. Payments in category (2) are treated by the partnership "as a distributive share to the recipient of partnership income," if the amount thereof is determined *with* regard to partnership income (sec. 736(a)(1)), or as a "guaranteed payment," if the amount thereof is determined *without* regard to partnership income (sec. 736(a)(2)). The payments here in issue are unrelated to partnership income and, consequently, if section 736 applies, they are "guaranteed payment[s]." See S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 395 (1954).

The critical distinction between a sale of a partnership interest under section 741 and a liquidation of such an interest under section 736 is that a sale is a transaction between a third party or the continuing partners individually and the withdrawing partner, whereas a liquidation is a transaction between the partnership as such and the withdrawing partner. Sec. 1.736-1(a), Income Tax Regs.; see also, e.g., *Karan v. Commissioner*, 319 F.2d 303, 307 (7th Cir. 1963), affg. a Memorandum Opinion of this Court. This means that the partners themselves, through arm's-length negotiations, to a large extent can "determine whether to take the 'sale' route or the 'liquidation' route, thereby

partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).

(2) SPECIAL RULES.—For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for—

(A) unrealized receivables of the partnership (as defined in section 751(c)), or

(B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.

allocating the tax burden among themselves." *David A. Foxman*, 41 T.C. 535, 551 (1964), affd. 352 F.2d 466 (3d Cir. 1965); see also *Jackson Investment Co.*, 41 T.C. 675, 681 (1964), revd. on other grounds 346 F.2d 187 (9th Cir. 1965); *V. Zay Smith*, 37 T.C. 1033, 1038 (1962), affd. 313 F.2d 16 (10th Cir. 1962); see generally H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 65 (1954); S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 89 (1954).

As we view the record in the instant case, it leaves little doubt that the instant transaction was a liquidation of the withdrawing partners' interests in the partnership. The partnership agreement and the withdrawal agreement are not cast in the terms of a purchase and sale. Rather they prescribe a formula for the liquidation of a withdrawing partner's interest. The partnership agreement provides that each withdrawing partner will receive (1) the balance in his capital account; (2) the balance in his income account, including his share of current earnings to the date of withdrawal;[8] (3) his share of unrealized receivables; and (4) his share of the value of the leased library, furniture, and fixtures.[9] As to clients who elect to continue to be served by one of the withdrawing partners, the partnership would bill all such clients for work which had been done unless "the withdrawing partner consents to the deduction of the amount of the bill from payments otherwise required to be made to him *in liquidation of his partnership interest.*"[10] (Emphasis added.) Thus, the agreement negotiated by the parties is not only consistent in principle with a liquidation, but its language expressly so describes a partner's withdrawal.

---

[8] The withdrawal transaction was completed as of Dec. 31, 1966, the end of the year, and there were evidently no funds in the income account at that time.

[9] The facts relating to the transaction between the partnership and Georgia Leasing with respect to the library and other equipment are not clear. The withdrawal agreement treats the library, equipment, and related items as having value of $18,564 (the withdrawing partners' share being $7,165.71) and shows the amount owed Georgia Leasing to be $30,594 (the withdrawing partners' share being $11,105.95). These figures were included, along with the value of unrealized receivables, in the computation of the aggregate amount payable to the withdrawing partners. Neither party argues that, in determining the deductibility of the amounts in issue, the library-equipment portion of the transaction should be treated differently or separately from the unrealized receivables portion. We proceed accordingly.

[10] Similarly, the partnership agreement refers, in the case of the expulsion of a partner, to payments "required to be made to him *in liquidation of his partnership interest,*" and, in the case of a partner's death, to the amounts paid in "complete settlement" of his interest. (Emphasis added.)

Moreover, the whole thrust of the partnership agreement and the withdrawal agreement was that the partnership would continue and that the amounts to which the withdrawing partners were entitled would be paid by the partnership rather than the continuing partners individually. Indeed, the partnership agreement provides that the withdrawal of any partner "shall have no effect upon the continuance of the partnership business" and that the interests of the remaining partners shall be adjusted so as to absorb, on a proportionate basis, the former interest of the withdrawing partner. Consistently, the promissory notes given to liquidate the withdrawing partners' interests were paid by partnership checks drawn on the partnership bank account. We think it is clear, therefore, that the transaction was one between the withdrawing partners and the partnership as such.

It is true, as emphasized by respondent, that the withdrawal agreement provides that, in consideration of the amounts payable under that formula, "the withdrawing partners do hereby each set-over, convey, confirm and transfer to the surviving partners all their right, title and interest" in the partnership assets. But, these words in themselves do not show the transaction was a sale. To the contrary, this language was appropriate in order to make it clear that the withdrawing partners were relinquishing their interests in the partnership assets.

It is also true, as respondent emphasizes, that the withdrawal agreement was signed by "Glenn B. Hester, Individually, for and on behalf of the surviving partners" and that the notes given to the withdrawing partners were signed by all the continuing partners. However, the reference to "surviving partners" in the withdrawal agreement indicates that Hester signed on behalf of the surviving partnership rather than as agent for the other partners as individuals. Because the partners are jointly and severally liable for partnership obligations, the legal consequences are the same as if the papers had been signed in the name of the partnership.

As to the promissory notes, the partnership agreement provides that no partner may, without the consent of the other partners, "make * * * any commercial paper * * * on behalf of the partnership." Thus, either an amendment to that agreement or the signatures of all the partners on the notes were required. Obviously, the simplest procedure was to have each continuing

partner sign the notes. Under the law of Georgia, moreover, an obligation undertaken by all the members of a partnership, within the scope of its business, binds the partnership, which, of course, places liability on the individual partners. Ga. Code Ann. sec. 75-302 (1973); *In Re R. P. Brown & Co.,* 8 F.2d 53 (S.D. Ga. 1925); *Swygert Bros. v. Bank of Haralson,* 13 Ga. App. 640, 79 S.E. 759 (1913). Therefore, appearance of the individual partners' signatures on the promissory notes does not show that the individual partners rather than the partnership were the obligors.

We think it is clear that the transaction was a liquidation rather than a sale and that petitioners' distributive shares from their law partnership during 1967 must be reduced by the payments to or on behalf of the withdrawing partners. Respondent argues that the actual value of the partnership's unrealized receivables as of December 31, 1966, did not exceed $75,000, even though they were assigned a value of $271,214.88 pursuant to the formula prescribed by the partnership agreement, and maintains that the difference between the two amounts was a payment for goodwill. We are not certain from a study of respondent's briefs whether this argument was intended to be advanced only as part of his contention that the transaction was a sale under section 741 or was also addressed to the tax consequences of a liquidation under section 736. If the argument was intended to refer to the determination of petitioners' tax liability under section 736, it is sufficient to point out that the partnership agreement expressly declares that, on the withdrawal of any partner, "no allowance shall be made to him * * * with respect to the value of the good will of the firm." In such circumstances, under section 736(b)(2)(B), payments in excess of the value of the unrealized receivables, including payments in lieu of goodwill, are income payments taxable to the withdrawing partners and deductible by the continuing partnership. See *V. Zay Smith,* 37 T.C. at 1038.

In reaching this conclusion, we do not intend to hold that partners are free to disregard the objective facts in structuring their liquidation agreements. In the instant case, our conclusion is predicated on the finding that petitioners' law partnership had no substantial assets other than its unrealized receivables and goodwill, and the partnership agreement expressly provided that no value would be attributed to goodwill. In such circumstances,

section 736(b)(2)(B) leaves us no latitude. No part of the payment can be treated as a payment for goodwill. The entire amounts paid to the withdrawing partners are guaranteed payments under section 736(a)(2).

To reflect other adjustments,

*Decisions will be entered under Rule 155.*