MILTON TOLMACH and ELAINE TOLMACH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tolmach v. Commissioner
Docket No. 18420-89
United States Tax Court
T.C. Memo 1991-538; 1991 Tax Ct. Memo LEXIS 592; 62 T.C.M. (CCH) 1102; T.C.M. (RIA) 91538; October 29, 1991, Filed *592 Decision will be entered for the respondent. Petitioner was a senior partner in a law partnership. The partnership was dissolved when other partners voted to dissolve the partnership and to continue the partnership business without petitioner. On dissolution, there was no written partnership agreement. An accounting was made, with a court-appointed referee determining the value of the dissolved partnership. The referee determined that a substantial portion of the value of the partnership was attributable to goodwill. A settlement agreement was entered into under which petitioner was to receive certain payments. Substantially all of such payments were designated as payments to petitioner for his share of unrealized receivables of the partnership. The agreement stated that such payments were intended to qualify as guaranteed payments under sec. 736(a)(2), I.R.C. 1954. Held, the payments to petitioner were payments made in liquidation of his interest in the dissolved partnership rather than on a sale of that interest. The consequences to petitioners of those payments are determined under sec. 736, I.R.C. 1954, rather than sec. 741, I.R.C. 1954. Held further, the *593 payments at issue were guaranteed payments and not payments attributable under the partnership agreement to petitioner's interest in the goodwill of the partnership. The payments are governed by sec. 736(a)(2), I.R.C. 1954, rather than sec. 736(b)(2)(B), I.R.C. 1954. Peter J. Graziano and Joseph Lapatin, for the petitioners. Benjamin Lewis and Andrew Ouslander, for the respondent. HALPERN, Judge. HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' 1983 and 1984 Federal income tax in the amounts of $ 20,098.50 and $ 39,106.57, respectively. The deficiencies result from respondent's disallowing capital gains deductions for payments received by petitioner Milton Tolmach on account of the dissolution of a law firm of which he was a partner. We must decide whether the payments in question were made in liquidation of petitioner Milton Tolmach's interest in the partnership or on account of his sale of that interest. FINDINGS OF FACT Certain facts have been stipulated and are found accordingly. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. References *594 to petitioner in the singular are to petitioner Milton Tolmach. Petitioners resided in Boca Raton, Florida, at the time the petition in this case was filed. Until its dissolution in 1976, petitioner was one of two senior partners in the law firm of Hayt, Hayt, Tolmach, & Landau (the Tolmach firm). The other senior partner was Bernard Landau (Landau). The firm specialized in collection work for the health care industry and enjoyed a national reputation. From January 1, 1971, until its dissolution in 1976, there was no written agreement of partnership. At the time of its dissolution, petitioner was in his midsixties and 17 years older than Landau. Prior to the firm's dissolution, discussions between petitioner and Landau concerning petitioner's retirement had proceeded for some time without the two being able to reach agreement. By April 1976, petitioner and Landau had become estranged. On April 26, 1976, Landau convened all of the partners of the firm except for petitioner and they voted to dissolve the firm. Landau and the partners voting with him notified petitioner, the firm's employees, and its clients of the dissolution. They (the continuing partners) announced that *595 a new firm, Hayt, Hayt & Landau (the Landau firm), would continue the practice formerly conducted by the Tolmach firm. The Landau firm took over the offices, personnel, equipment, bank accounts, leases, books, papers, records, files, and all other assets of the Tolmach firm. The continuing partners were the initial partners of the Landau firm. Petitioner was excluded from the offices of the Landau firm. Legal action followed the dissolution. An action was commenced by the continuing partners, as plaintiffs, in the Supreme Court of the State of New York, County of Nassau (a court of general jurisdiction). Petitioner was named as defendant. Plaintiffs alleged a dissolution of the Tolmach firm and that the parties were unable to agree on their respective accounts in the firm. Plaintiffs asked for an accounting to ascertain the shares of the parties and that the court fix and direct the division of the property of the firm accordingly. Petitioner counterclaimed, requesting damages for exclusion from the Tolmach firm. A trial lasting some 16 days was held. Subsequently, an interlocutory judgment was rendered for the plaintiffs, confirming that the Tolmach firm had been dissolved *596 on April 26, 1976, and mandating that an accounting be made. The court appointed a referee to take and state such account. A judgment was rendered for petitioner on his counterclaim for damages resulting from his expulsion from the firm and for other reasons. The referee was directed to ascertain and report on the amount of damages that should be paid. The referee subsequently issued a report that valued the partnership at $ 11,410,000. He summarized the components of that value as follows: 1. Equity
$ 660,000
2. Work in progress
2,000,000
3. Goodwill
8,750,000
Total
$ 11,410,000
Applying petitioner's partnership percentage as determined by the court (23.5 percent), the referee determined that petitioner's share of that value equaled $ 2,681,350. He determined that petitioner was entitled to damages in the amount of $ 150,000. Thus, the referee determined that petitioner was entitled to a total of $ 2,831,350. He noted that credit should be given for certain amounts already received by petitioner. The findings of the referee were confirmed by the court. Plaintiffs (the continuing partners) filed a notice of appeal and retained a retired justice of the court *597 in which the appeal would be heard to prosecute it on their behalf. Because the parties agreed to a settlement, no appeal was ever prosecuted. Petitioner agreed to receive payments in an amount less than recommended by the referee. The parties to the agreement (the Agreement) included petitioner, the (dissolved) Tolmach firm, all but two of the continuing partners (in their individual capacities), and the Landau firm. Two pertinent recitals in the Agreement are as follows: WHEREAS, [the Landau firm] as successor to the [Tolmach firm] is willing to pay Tolmach the sum of $ 1.7 million in payment for his share of the unrealized receivables of the [Tolmach firm] at the time of dissolution, and to pay in addition the sum of $ 155,000 as and for Tolmach's interest in the fixed assets and good will of the [Tolmach firm], and to guarantee the payment of said sums regardless of the income received by the Partnership; [1] and WHEREAS, Tolmach is willing to accept said sums as full payment for his interest in the partnership.
*598 The Agreement goes on to provide that the sum of $ 1.7 million shall be paid in various monthly installments. A prior payment of a portion of that sum is described as a part payment of petitioner's share of the unrealized receivables of the Tolmach firm. The prior payment and all installments of the $ 1.7 million are described as being intended to qualify as guaranteed payments under section 736(a)(2). [2] The Agreement provides that the $ 155,000 payment for petitioner's interest in the fixed assets and goodwill of the Tolmach firm is to be paid in one lump sum. That payment is described as being intended to qualify as a payment under section 736(b). Among other things, the Agreement also provides: (1) the Landau firm is to provide key man life insurance on the life of Landau, the beneficiary of which is a trust to be established for the purpose of making payments to petitioner under the Agreement; (2) the Landau firm, its successor, and the partners thereof, are jointly and severally liable for payments, but petitioner may not obtain judgment against any partner unless execution is first returned unsatisfied against the Landau firm or its successor; (3) default judgments are *599 authorized; (4) the Agreement is binding on any future partners or successors of the Landau firm, and (5) general releases are to be exchanged by all of the signatories to the Agreement. In negotiating the Agreement, petitioner was represented by counsel. On at least two prior occasions, petitioner, Landau, and the Tolmach firm had been involved with the withdrawal of a partner. Emanuel Hayt was one of the founders of the Tolmach firm. His son is Jonathan Hayt. In April 1969, immediately after the establishment of the Tolmach firm, the interest of Jonathan Hayt in three predecessor firms was purchased by his father, petitioner, and Landau for $ 500,000, payable in installments. Ten percent of the purchase price was attributed to goodwill. In December 1969, Emanuel Hayt retired from the Tolmach firm. His retirement agreement, which modified the partnership agreement, provided, *600 among other things, for payments to him of $ 50,000 a year for life and to his estate of $ 25,000. Petitioners do not claim that any portion of those payments was paid for goodwill. In 1983 and 1984 (the years here in issue), in discharge of its obligation to pay to petitioner $ 1.7 million pursuant to the Agreement, the Landau firm made payments to petitioner of $ 135,417 and $ 170,833, respectively. The Landau firm provided to petitioner for each such year a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., showing such payments as guaranteed payments. Petitioner took a position inconsistent with such characterization in his individual Federal income tax returns. He reported the payments as resulting from a sale of his partnership interest in the Tolmach firm. Petitioner treated the payments as giving rise to long-term capital gains and claimed capital gains deductions. Respondent disallowed those deductions and the present litigation ensued. OPINION Introduction
The principal issue before us concerns the nature of the payments of $ 135,417 and $ 170,833 received by petitioner pursuant to the Agreement in 1983 and 1984 (the payments). Petitioners *601 argue that the payments were received on account of the sale of petitioner's interest in the Tolmach firm to his former partners in that firm. Because the payments were received on account of the sale of an interest in a partnership, petitioners argue, section 741 governs the taxation of such payments. Under section 741, gain recognized on the sale of an interest in a partnership generally is considered gain from the sale or exchange of a capital asset. [3] Thus, conclude petitioners, they are entitled to the capital gains deductions that they claimed in their returns. See secs. 1202, 1222. Respondent argues that the payments were received in liquidation of petitioner's interest in the Tolmach firm and, thus, taxation of the payments is governed by section 736. [4] Respondent further argues that the payments cannot be considered as received in exchange for an interest in partnership property under section 736(b) but rather must be considered as guaranteed payments under section 736(a)(2). Guaranteed payments give rise to ordinary income. See sec. 707(c); sec. 1.707-1(c), Income Tax Regs. (guaranteed payments included as ordinary income). Because guaranteed payments give rise *602 to ordinary income and, thus, do not constitute capital gains, respondent has denied to petitioners capital gain deductions on account of such payments. For reasons to be stated, we agree that the payments do not constitute capital gains. *603 Tax Consequences of a Sale Versus a Liquidation
The tax consequences of the sale of a partnership interest may differ significantly from those of a liquidation of that interest. That is so even though the economic consequences of those alternatives may be indistinguishable under certain circumstances. For example, when a partner retires, it generally makes little or no economic difference to either him or the continuing partners whether his interest is purchased pro rata by the continuing partners or liquidated in exchange for payments from the partnership. In either case, the continuing partners ultimately bear the cost of acquiring the interest and their interests in the partnership are increased proportionately. See 2 W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, pars. 15.02 and 15.02[2], pp. 15-8, 15-9, 15-11 (2d ed. 1990). When faced with such a situation, it is clear that the partners have complete flexibility to structure the transaction as either a section 741 sale of the withdrawing partner's interest to the other partners or a section 736 liquidation of the retiring partner's interest by the partnership. Id. par. 15.02[3][a], *604 p. 15-15. See Spector v. Commissioner, 641 F.2d 376, 380 (5th Cir. 1981), reversing on another issue 71 T.C. 1017 (1979); Cooney v. Commissioner, 65 T.C. 101, 109-110 (1975); Foxman v. Commissioner, 41 T.C. 535, 551-552 (1964), affd. 352 F.2d 466 (3d Cir. 1965). It must be kept in mind, however, that the flexibility that is permitted is not a license to determine the tax result simply by checking a box on the tax return. See Spector v. Commissioner, supra.The permitted flexibility is the flexibility to structure the transaction as either a sale or a liquidation. A transaction properly structured as a sale or liquidation will be taxed accordingly. Continuation of the Partnership Business Following Dissolution of the Partnership
The dissolution of a partnership no more terminates the partnership for Federal income tax purposes than it does for State law purposes. Compare N.Y. Partnership Law sec. 61 (McKinney 1988) with sec. 1.736-1(a)(6), Income Tax Regs. On dissolution the partnership is not terminated, but continues until the winding up of partnership *605 affairs is completed. N.Y. Partnership Law sec. 61 (McKinney 1988). Although liquidation of the partnership often follows dissolution, it is not required. Compare N.Y. Partnership Law sec. 69(1) and (2) (McKinney 1988). Indeed, after dissolution of the partnership, the partners may continue the business of the partnership indefinitely, so that winding up occurs, if at all, only in the technical sense of paying off the outgoing partner (or his estate). 2 A. Bromberg & L. Ribstein, Bromberg and Ribstein on Partnership, sec. 7.01(b), pp. 7:4-7:6 and sec. 7.08(a), pp. 7:73-7:74 (1988). If the business of the partnership is carried on by any of its partners in partnership form, the partnership is deemed not to terminate at all for Federal income tax purposes. See sec. 708(b)(1)(A); Neubecker v. Commissioner, 65 T.C. 577 (1975) (following dissolution of three-person law firm, new firm formed by two withdrawing members viewed to be continuation of old partnership). If, following dissolution, the business of the partnership is carried on by any of the partners in partnership form, and if the withdrawing partner is paid off out of the assets of the continued business *606 by way of a liquidating distribution to him, section 736 will apply to such payment. [5] If, on the other hand, his interest is purchased by the continuing partners, section 741 will apply. See Cooney v. Commissioner, supra (liquidation and not sale treatment for withdrawing partners on their discharge from partnership liabilities and receipt of payments by them following "termination" of partnership and continuation of business by remaining partners). We must determine which model is appropriate to the facts here at issue. *607 Payments to Petitioner: Sale or Liquidation
On April 26, 1976, the Tolmach firm was dissolved. There was no written agreement of partnership and, apparently, no oral agreement addressing the consequences of a dissolution. No actual winding up occurred, and the business of the firm was continued by the Landau firm, its initial partners being all of the partners of the Tolmach firm other than petitioner. For Federal income tax purposes, the Tolmach firm continued and did not terminate. See sec. 708(b)(1)(A). Because there was no agreement among the partners concerning dissolution, petitioner's rights following dissolution were those accorded to him by New York partnership law. Petitioner had the right to an accounting. N.Y. Partnership Law sec. 74 (McKinney 1988). He had the right to compel a liquidation of the partnership and to receive in cash a portion of any surplus. Id.sec. 69. He could agree to a continuation of the partnership business. Id. What did in fact occur is as follows: An action to compel an accounting was commenced by the continuing partners in New York Supreme Court. The court appointed a referee to take and state such account. The referee *608 made his report, which was confirmed by the court and which determined that petitioner's share of the value of the Tolmach firm was $ 2,681,350. The referee also determined that petitioner was entitled to damages in the amount of $ 155,000. The continuing partners noticed an appeal, but no appeal was ever prosecuted. No liquidation of partnership assets was undertaken. The Agreement was entered into and all claims were settled pursuant thereto. Pursuant to the Agreement, petitioner received the payments here in question. As we stated in Cooney v. Commissioner: The critical distinction between a sale of a partnership interest under section 741 and a liquidation of such an interest under section 736 is that a sale is a transaction between a third party or the continuing partners individually and the withdrawing partner, whereas a liquidation is a transaction between the partnership as such and the withdrawing partner. * * * [Cooney v. Commissioner, 65 T.C. at 109; citations omitted.]
The payments here in question were made by the Landau firm to petitioner pursuant to its obligation under the Agreement to make such payments. Although the Agreement *609 is not unambiguous, we think that the terms thereof better indicate a transaction between the Landau Firm as such and petitioner than they do a transaction between the continuing partners individually and petitioner. Indications consistent with a transaction between the partnership as such and petitioner are as follows: Both the Tolmach firm and the Landau firm are parties to the Agreement. The Agreement recites that the Landau firm, "as successor to the [Tolmach firm]," is willing to make payments to petitioner and to guarantee such payments regardless of the income received by the partnership. The Agreement binds not only the Landau firm but "its successor firm or entity." To secure the Landau firm's obligations under the Agreement, the Agreement obligates the Landau firm and any successor to insure the life of Landau for $ 500,000 during the term of the Agreement. Any proceeds of such insurance are to be received by a trustee and used to discharge the monetary obligations imposed by the Agreement. Any surplus is to be paid to the Landau firm or any successor. The Landau firm or any successor is to direct the investment of the insurance proceeds and to pay the cost of the *610 insurance and the fee of the trustee. Mutual releases are to be delivered by the parties. Petitioner's releases shall include releases of both the Tolmach firm and the Landau firm. The above are all factors consistent with a transaction between the partnership as such and petitioner. There are, however, inconsistencies in the Agreement. Those inconsistencies do not indicate (and petitioners have not argued) that the Landau firm was acting as an agent for the partners thereof in their own rights (i.e., that the partnership served as a purchasing agent for the partners' purchase of proportional shares of petitioner's interest in the partnership). Rather, petitioners argue that the Agreement was a contract of purchase and sale entered into by the continuing partners and petitioner. [6] Petitioners rely heavily on the fact that the continuing partners were parties to the Agreement and that they are jointly and severally liable to petitioner. They point out that, under New York partnership law, except in cases of a partner's wrongful act or breach of trust, partners are only jointly liable for debts and obligations of the partnership. See N.Y. Partnership Law secs. 24, 25, and *611 26 (McKinney 1988). Petitioners argue that such variation from the statutory norm indicates that the Agreement was not between the partnership as such and petitioner but between the continuing partners in their individual capacities and petitioner. We disagree. It is true that, in their individual capacities, the continuing partners were parties to the Agreement. They had, in such capacities, authorized entries of judgment against themselves upon default. Nevertheless, the Agreement further provides that petitioner "shall not obtain judgment against the [continuing partners] or any of them on account of a breach of the Agreement until execution shall first have been returned unsatisfied against [the Landau firm] or its successor firm or entity." The Landau firm had the immediate obligation to make the payments called for under the Agreement. The continuing partners, in their own capacities, were obligated for the payments only upon a default by the Landau firm and after execution of a judgment against that firm, or a successor firm or entity, was returned unsatisfied. We view the obligation of the continuing partners in their own right as being secondary to the obligation of *612 the Landau firm. Their obligation provided additional security to the primary obligation of the Landau firm. Cf. White Factors, Inc. v. Friedman, 32 Misc. 2d 978, 224 N.Y.S.2d 339, 340 (1961) (a determination of whether liability is secondary might be made from the instrument evincing a debt, i.e., whether a duty to pay arises only if another obligor does not pay). That obligation did not change the basic character of the Agreement, which was an agreement by the partnership to make payments in liquidation of petitioner's interest in the continuing Tolmach firm. Wheeling v. Commissioner, T.C. Memo 1964-128, cited by petitioners, is distinguishable.
*613 Finally, the Agreement not only is more consistent with a liquidation of petitioner's interest than it is with a sale of that interest but its references to section 736 expressly describe the intended tax treatment of the payments called for under the Agreement as being that of payments in liquidation of a partner's interest. Petitioners would make something of the use of the predicate adjective "intended" to describe the qualification ("intended to qualify") of the payments under section 736, as if such usage indicated something indefinite. We do not make anything of that usage other than an expression of a legal conclusion that was not subject directly to settlement by agreement of the parties to the Agreement. Petitioner was a party to the Agreement and we will not separate him from that expression of intent. Cf. Bradley v. United States, 730 F.2d 718, 720 (11th Cir. 1984); Spector v. Commissioner, 641 F.2d 376, 381-382 (5th Cir. 1981); Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967). [7]
*614 We conclude, based on the provisions of New York partnership law and the Agreement, that the transaction at bar was a transaction between the partnership as such and petitioner rather than a transaction between the continuing partners in their own rights and petitioner. The transaction was in the nature of payments made in liquidation of petitioner's interest in the partnership and thus the tax consequences are determined under section 736 rather that section 741. We will now turn to the application of section 736. Application of Section 736
Pursuant to the Agreement, petitioner was to receive payments of $ 1,855,000, $ 1.7 million in payment for his share of the unrealized receivables of the Tolmach firm, and $ 155,000 for his interest in the fixed assets and goodwill of the firm. At issue here are installments of the $ 1.7 million received in 1983 and 1984. We have determined that payments made pursuant to the Agreement were made in liquidation of petitioner's interest in the Tolmach firm and are to be taxed pursuant to section 736. The Agreement provides that the payments are to be made to petitioner without regard to the income of the Landau firm. Accordingly, the *615 payments appear to be guaranteed payments made in liquidation of petitioner's partnership interest, the tax treatment of which is governed by section 736(a)(2). Petitioners, however, would recharacterize some portion of the payments. Based on the finding of the referee appointed by the New York Supreme Court that goodwill accounted for approximately 77 percent of the value of the Tolmach firm, petitioners argue that the allocation in the Agreement of approximately 10 percent of the total payments to goodwill should be ignored and 77 percent of the total payments received by him under the Agreement should be treated as for goodwill. That we cannot do. Section 736(b) is specific with regard to payments for goodwill. Except to the extent provided for in the partnership agreement, payments for goodwill are considered as either a distributive share or a guaranteed payment under section 736(a). Sec. 736(b). The term "partnership agreement" is defined in section 761(c). A partnership agreement includes modification made up to the time (determined without extensions) for filing the partnership return for the taxable year, which are agreed to by all of the partners, or otherwise adopted *616 as provided for in the partnership agreement. Id. The agreement may be oral. Sec. 1.761-(1) (c), Income Tax Regs. On April 26, 1976, at the time of dissolution of the Tolmach firm, there was no written partnership agreement. Petitioners argue that there was an agreement among the partners providing for a payment in exchange for a withdrawing partner's interest in goodwill. Petitioners argue that such agreement is established, one, by the fact that, previously, on the withdrawal of a partner, a payment had been made for goodwill and, two, that the Agreement provides for a payment for goodwill. Petitioners then turn to the regulations interpreting section 736 and point out that those regulations state that if the partnership agreement provides for a reasonable payment with respect to goodwill such payment will be treated as a payment in exchange for goodwill. See sec. 1.736-1(b)(3), Income Tax Regs. Petitioners argue that a reasonable payment for goodwill is 77 percent of the total amount paid to petitioner. They base that percentage on the referee's finding that 77 percent of the value of the Tolmach firm at the time of dissolution was attributable to goodwill, which finding *617 was confirmed by the New York Supreme Court. Since the Agreement provides for a payment for goodwill, petitioners' argument concludes, and since 77 percent of the value of the partnership is a reasonable allocation to goodwill, a reasonable payment for goodwill must constitute at least 77 percent of total payments. First, petitioners misread section 736(b)(2)(B). That section exempts from ordinary income treatment under section 736(a) payments for goodwill only if such payments are called for in the partnership agreement and only to the extent there called for. The Senate report that accompanied section 736 when it was before the Congress explains section 736(b)(2)(B) as follows: Special rules are provided in subsection (b)(2) so as to exclude certain items from the application of subsection (b). Thus, payments for an interest in partnership property under subsection (b) do not include amounts paid for unrealized receivables of the partnership. Also excluded from subsection (b) are payments for an interest in partnership goodwill, except to the extent that the partnership agreement provides for payments with respect to goodwill. Where the partnership agreement provides *618 for payments with respect to goodwill, such payments may not exceed the reasonable value of the partner's share of partnership goodwill. [S. Rept. 1622, 83d Cong., 2d Sess. 395 (1954); emphasis added.]
Section 1.736-1(b)(3), Income Tax Regs., is not to the contrary; that regulation provides a ceiling on payments for goodwill not a floor under which they may not be lowered. Cf. Smith v. Commissioner, 313 F.2d 16, 19-20 (10th Cir. 1962), affg. 37 T.C. 1033 (1962). Thus, we will not read into a partnership agreement a larger payment for goodwill than there provided for. There is of course a question here as to what the partnership agreement provided. Even granting, as petitioners would have us do, that there was an agreement among the partners providing for a payment in exchange for a withdrawing partner's interest in goodwill, there is no evidence in the record that such agreement provided for any greater payment than specified in the Agreement. Prior practice is consistent with no more than a 10-percent allocation to goodwill. On the withdrawal of Jonathan Hayt, 10 percent of the purchase price paid to him was attributed to goodwill. *619 Emanuel Hayt received retirement payments pursuant to an agreement negotiated with the firm, but nothing in evidence shows that any portion of those payments (or the payment to be received by his estate) was, under the terms of that agreement, attributed to his interest in the goodwill of the partnership. We admit that it is likely that, on April 26, 1976, on dissolution, the Tolmach firm did enjoy goodwill and that such goodwill constituted a substantial portion of the value of the firm. Such was a finding in the report of the referee appointed by the New York Supreme Court to take and state an account of the firm, and the referee's report was confirmed by the court. Nevertheless, the court recognized that the firm had for some years been operating under no written agreement of partnership. The court neither made nor adopted any finding concerning whether the oral partnership agreement in effect upon dissolution required that, if petitioner's interest in the firm were to be redeemed by way of payments made in liquidation, some portion of those payments was to be attributed to petitioner's interest in the goodwill of the firm. Thus, we are justified in finding that there was *620 no agreement among the partners of the Tolmach firm providing that any portion of the payments to be made to petitioner pursuant to the Agreement was to be attributed to petitioner's interest in the goodwill of the firm in excess of the $ 155,000 payment for goodwill there provided for. Moreover, petitioners have not argued that any portion of the $ 1.7 million described as being for petitioner's share of unrealized receivables is for partnership property other than goodwill (or unrealized receivables) so that taxation under section 736(b) would otherwise be appropriate. Accordingly, even were we to agree with petitioners that partnership goodwill constituted a substantial portion of the value of the Tolmach firm, we would be unable to hold that any portion of the $ 1.7 million described in the Agreement as being for petitioner's share of unrealized receivables was other than a payment subject to ordinary income treatment under section 736(a). Finally, petitioners disavow the allocation of payments found in the Agreement, claiming that by the subtle threat of an expensive appeal petitioner had no choice but to accept the Agreement on a "take-it-or-leave-it" basis. They argue that, *621 therefore, the payments should be reallocated, with 77 percent going to goodwill. An appeal here would lie to the Eleventh Circuit Court of Appeals, and thus the rule that we must apply is the rule found in Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), adopted by the Eleventh Circuit in Bradley v. United States, 730 F.2d 718 (11th Cir. 1983). See Spector v. Commissioner, 641 F.2d 376 (5th Cir. 1981); Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Petitioners must show a mistake, overreaching, duress, or other reason that, in an action between the parties to the transaction, would be sufficient to alter the contested construction or set it aside. Bradley v. United States, 730 F.2d at 720; Spector v. Commissioner, 641 F.2d at 385-386. Petitioners have not done so. In essence, petitioners are claiming only that petitioner did not receive sufficient aftertax dollars for his interest in the partnership. Had petitioner received a larger guaranteed payment, he would have been in the same after-tax position *622 as if a greater portion of the payments he did receive were attributed to his interest in goodwill. There is no economic difference between a liquidating payment for a withdrawing partner's interest in the goodwill of the partnership that is attributed to goodwill and one that is in liquidation of his interest in goodwill but that is not so attributed. It is clear, however, as discussed above, that Congress has allowed the withdrawing and continuing partners to allocate the resulting tax benefits and burdens as they see fit, by attributing or not attributing such payments to goodwill. See sec. 736(b)(2)(B). Petitioners have not demonstrated to us that, given the permitted flexibility to bargain over tax consequences and the underlying nature of petitioners' complaint (that petitioner did not get enough money), a court in an action between the parties would reform the Agreement by reattributing to goodwill payments previously attributed as guaranteed payments. Thus, we will not disregard the allocation of payments found in the Agreement. The payments to petitioner designated in the Agreement as in payment for his share of unrealized receivables must be treated under section 736(a)(2) *623 as guaranteed payments made in liquidation of the interest of a retiring partner. For the reasons stated, we sustain the deficiencies determined by respondent. Decision will be entered for the respondent. Footnotes
1. It is unclear, but the reference here apparently should be to the Landau firm. The term "Partnership" is defined to be the Tolmach firm.↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.↩
3. Sec. 741 provides: In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).↩
4. Sec. 736(a) and (b) provides: (a) Payments Considered as Distributive Share or Guaranteed Payment. -- Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered -- (1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership. (b) Payments for Interest in Partnership. -- (1) General Rule. -- Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a). (2) Special Rules. -- For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for -- (A) unrealized receivables of the partnership (as defined in section 751(c)), or (B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.↩
5. A partner need not retire in the conventional sense of concluding his working or professional career in order for sec. 736 to apply to payments made in liquidation of his interest. A partner retires for purposes of sec. 736 when he ceases to be a partner under local law. Sec. 1.736-1(a)(ii), Income Tax Regs. Thus payments made to a partner expelled from, or voluntarily leaving, a partnership may fall under sec. 736. See, e.g., Cooney v. Commissioner, 65 T.C. 101↩ (1975).
6. We have used the term "continuing partners" herein to refer to all of the partners of the Tolmach firm who voted to dissolve that firm and who were the initial partners of the Landau firm. All but two of the continuing partners (so defined) are parties to the Agreement. The absence of those two, Joseph K. Fitzpatrick and Robert H. Silverstadt, as parties is unexplained. They are, however, covered by the release provisions of the Agreement. Neither party has attached significance to their absence as parties and, for that reason, we will ignore it. We will continue to use the term "continuing partners," but it should be understood to exclude Fitzpatrick and Silverstadt as parties to the Agreement.↩
7. We note that this case is appealable to the Eleventh Circuit.↩